IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 3:20-cr-11 |
| v. | ) | |
| | ) | **GOVERNMENT'S RESISTANCE** |
| TREMAYNE LAMAR CLEMONS, | ) | **TO DEFENDANT'S MOTION TO** |
| | ) | **SUPPRESS EVIDENCE** |
| Defendant. | ) | |

Comes now the United States of America, by and through the United States Attorney for the Southern District of Iowa and the undersigned Assistant United States Attorney, Will R. Ripley, and hereby respectfully submits this resistance to the defendant's motion to suppress evidence.

### I.   Introductory Facts

On December 25, 2019, at approximately 9:32 p.m., officers from the Coralville Police Department were dispatched to the area near 950, 952, and 954 Boston Way, Coralville, Iowa, reference a shooting that had occurred. Upon arrival, officers located three subjects suffering from gunshot wounds. All three subjects were transported to University of Iowa Hospitals where one victim died from his injuries. During the course of the investigation, investigators learned the defendant, Tremayne Lamar Clemons, was both a known associate of subjects involved in the shooting and involved in drug distribution. It was also learned that subjects involved in the shooting commonly hung out at the defendant's residence, located at 954 Boston Way Apartment 5, Coralville, Iowa.

The next day, on December 26, 2019, a free air dog sniff was conducted at the defendant's apartment. The apartment is part of a three-story, twelve-plex building located on the west side of Boston Way. Apartment 5 is located on the second floor. The building has four apartments on each of its three floors. The building has entrances and stairwells on both its east and west sides. The east side faces Boston Way. The west side faces a parking lot area. Neither the east door, nor the west door is locked. In fact, while the doors have handles, they do not have a latching mechanism. The doors are held closed via a hydraulic tension arm. Any person simply pulling on the door handle from the outside can gain access to the interior hallways and stairwells of 954 Boston Way. Once inside the interior of the building, any person is able to walk to the door of any of the twelve apartments.

As part of the investigation into the shooting, shortly after 1:00 p.m. on December 26, 2019, Iowa City Police Officer Travis Neeld and his canine partner, Luke, entered 954 Boston Way through one of the unlocked exterior doors. They walked up the stairs to the second floor and approached Apartment 5. As they walked through the hallway, Officer Neeld noted the odor or burned marijuana. As Luke approached Apartment 5, Officer Neeld noticed his tail moving and his breathing change in ways consistent with him being in and near an odor of drugs. Officer Neeld gave Luke the command to sniff and, after sniffing the perimeter of the door of Apartment 5, Luke alerted to the presence of drugs.

Luke is a well-trained and certified canine officer. He accredited for the detection of marijuana, MDMA, hashish, cocaine, crack cocaine, heroin, black tar

heroin, and methamphetamine. Attached hereto as Exhibit 1, are certificates and records with reference to Luke's and Officer Neeld's training, certification, and re-certification.

Later that same day, officers sought and received a State of Iowa search warrant. They executed that warrant on that same day. The search of the defendant's apartment yielded a black Springfield Armory AR15-style rifle; a black and silver Glock 43 pistol; a black and olive green Mossberg shotgun; ammunition for a .380 caliber firearm; ammunition for a nine-millimeter firearm; ammunition for a 5.56 firearm; firearm magazines; THC cartridges; CBD wraps; glass jars with the odor of marijuana; marijuana cigarette rolling papers; a marijuana blunt cutter; a marijuana grinder with a small amount of marijuana shake; and two cell phones.

In his motion to suppress evidence, the defendant claims certain evidence discovered during the execution of a search warrant should be suppressed. It appears he is making that claim for two reasons. First, he suggests the presence of the canine officer and its handler near the door violated the rules against entry into the "curtilage" area of the defendant's residence. Secondly, he suggests a canine officer's alert is not reliable. Both claims fail.

## II. The canine officer did not enter the defendant's curtilage

In *Florida v. Jardines*, the United States Supreme Court held that entry onto the front porch of a private home coupled with the use of a canine officer trained in the detection of drugs is a "search" within the meaning of the Fourth Amendment. *Florida v. Jardines*, 569 U.S. 1, (2013). The Court held the entry onto the front

porch was an entry into the curtilage of the home. *Id*. The defendant relies on that case to suggest Officer Neeld's use of his canine officer, Luke, was similarly a "search" within the meaning of the Fourth Amendment. That suggestion is misplaced, however, because the common, unlocked hallway of the defendant's apartment building is not curtilage.

A trained dog's detection of odor in a common corridor does not contravene the Fourth Amendment. *United States v. Scott*, 610 F.3d 1009, 1016 (8th Cir. 2010); *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997). Defendant's reliance on *Jardines* is misplaced because it cannot be said the common hallway of the apartment building is curtilage. In *United States v. Dunn*, 480 U.S. 294 (1987), the Court indicated that the "central component" of the inquiry as to whether an area is part of the home is whether that area harbors the intimate activity associated with the sanctity of a home and the privacies of life. *Id.*, at 300. If that is the "central component," it cannot be said the common hallway of an apartment building fits. A common hallway is used by residents to travel from their apartment to the outside door and back. This is not the area in which "intimate activities" are likely to occur.

The Court in *Dunn* identified four factors relevant to determining curtilage:

1) the proximity of the area claimed to be curtilage to the home;
2) whether the area is included within an enclosure surrounding the home;
3) the nature of the uses to which the area is put; and
4) the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301.

Applying these factors from *Dunn* does not support finding a common hallway to be curtilage. The common hallway is close to the apartment in question and also within the enclosure surrounding it, suggesting the first two factors indicate the hallway may fit. The third factor, however, weighs heavily the other direction. The nature of the common hallway is that it is not used for intimate activities, but rather to provide the defendant and the other residents of the building access to the street and to the parking lot. The fourth factor also weighs heavily against a finding that the common hallway is curtilage. Any person sharing the hallway can view the activities of the defendant while in the hallway. The defendant and his neighbors sharing the hallways are not be permitted to shield their activities in the hallway from the other residents, as everyone has the same right to access it that the defendant does—and, in fact, that anyone does.

Importantly, the Eighth Circuit has held there is no "generalized expectation of privacy in the common areas of an apartment building. *United States v. Brooks*, 645 F.3d 971, 976 (8th Cir. 2001)(citations omitted). The *Brooks* court found that a common staircase at a multi-family dwelling cannot "be characterized as curtilage." *Id.* at 975. Here, canine officer Luke's sniff occurred in a common hallway of an apartment building. Without an expectation of privacy in the hallway, it cannot have the same constitutional protections as the curtilage around a house. Accordingly, because the search at issue did not occur on a constitutionally protected extension of the home, *Jardines* is inapplicable.

In a factually similar case, the Eighth Circuit has clearly held that a dog "sniff of the apartment door frame from a common hallway does not constitute a search subject to the Fourth Amendment. *United States v. Scott*, 610 F.3d 1009 (8th Cir. 2010). In *Scott,* as in here, officers were lawfully present in the common hallway of an apartment building. *Id*. at 1015. The defendant's first claim fails.

### III. The canine officer is reliable and his alert provided probable cause to search

A court can presume that a certified canine officer's alert provides probable cause to search. *Florida v. Harris*, 568 U.S. 237, 246-47 (2013). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.*, at 248. A certified canine officer's alert, even in the absence of the other evidence cited in the affidavit, is sufficient to generate probable cause. *Id*.

Without evidence of lack of training or of some deviation from that training, a defendant cannot "overcome the presumption of probable cause that attaches when a well-trained dog gives an alert." *See United States v. Gonzalez*, 781 F.3d 422, 420 (8th Cir. 2015) (citing *Florida v. Harris*, 568 U.S. 237, 247 (2013)). "The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Harris*, 568 U.S. at 248.

> Evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his

> reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs. After all, law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources.

*Id.* at 246–47. In fact, an affidavit requesting a search warrant "need only state the dog has been trained and certified to detect drugs" and "need not give a detailed account of the dog's track record or education." *United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) (quotations omitted).

There is no set checklist of required information relating to the certified canine that the Government must produce. *See Harris*, 568 U.S. at 247. But the Government has attached records and certificates related to Officer Neeld's and Luke's training. At the evidentiary hearing, the Government will show that Luke has been annually certified since 2013 in the detection of the odors of substances, including marijuana. Officer Neeld will also testify that he and Luke regularly complete additional hours of training. Clearly then, with Officer Neeld's and Luke's training, Luke's alert at the defendant's apartment door provides sufficient probable cause to support the search warrant. This is especially true here, as the affidavit includes other facts supporting probable cause.[1]

---

[1] See the affidavit in support of the search warrant. The search warrant and affidavit in support is attached hereto as Exhibit 2.

## IV. Conclusion

WHEREFORE, based upon the aforementioned, the government respectfully requests that this court deny the motion to suppress in its entirety.

          Respectfully Submitted,

          Marc Krickbaum
          United States Attorney

By:   */s/ Will R. Ripley*
      Will R. Ripley
      Assistant United States Attorney
      131 E. 4th Street
      Davenport, Iowa 52801
      Tel: 563-449-5432
      Fax: 563-449-5433
      Email: william.ripley@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on April 2, 2020, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system. I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:
____U.S. Mail _____ Fax _____Hand Delivery
 X   ECF/Electronic filing ____Other means
UNITED STATES ATTORNEY
     By: */s/Will R. Ripley*