IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>TREMAYNE LAMAR CLEMONS,<br>    Defendant. | 3:20_CR_011 |

DEFENDANT'S *PRO SE* BRIEF ON
MOTION TO SUPPRESS EVIDENCE (minimal editing[1])

COUNSEL SUBMITTED AT CLIENT'S REQUEST

Defendant Motions the Court to Suppress all evidence and derivative evidence, obtained through violation of Defendant's 4th Amendment rights of the United States Constitution pursuant to Fruits of a Poisonous Tree doctrine and the Exclusionary Rule.

1.      Unlawful search of Defendant's home.  The government's use of trained police dogs to investigate "the home and it's immediate surroundings" is a search within the meaning of the 4th Amendment.  Citing *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013).  The *Jardines* Court did not stipulate it's ruling to apply exclusively to single family houses.

The holding in *Jardines* applies to all homes.  To distinguish *Jardines* based on the differences between the front porch of a single family home and the closed hallway of an apartment building would be to draw an arbitrary line that would apportion 4th Amendment protections on vagaries of the circumstances that decide home ownership or rental property.  See *U.S. v. Whitaker*, 820 F.3d 849, 854 (7th Cir. 2016).  Also see *State v. Kono*, 324 Conn. 80, 152 A.3d 1, 26 (2016).

---

[1]Counsel has re-numbered the paragraphs and has attempted to place appropriate paragraph breaks.

There are multiple Federal and State courts that have found 4th Amendment violations due to warrantless k-9 sniffs of homes located in apartment buildings via *Jardines*. See *U.S. v. Whitaker*, 820 F.3d 849, 854 (7th Cir. 2016). Also see *U.S. v. Burston*, 806 F.3d 1123 (2015). Also see *U.S. v. Hopkins*, 824 F3d 726, April 13, 2016. See also *People v. Bonilla*, 2018 Ill. 122484, 120 N.E.3d 930, 427 Ill. Dec. 863 (Ill. 2018). Also see *State v. Kono*, 324 Conn. 80, 752 A.3d 1 (2016). Also see *State v. Rendon*, 477 S.W.3d 805 (Tex. Crim. App. 2015). Also see *People v. Burns*, 50 N.E.3d 610, 401 Ill. Dec. 418 (Ill. 2016). There are also Federal and State courts pre-*Jardines* that found 4th Amendment violations due to warrantless K-9 sniffs of homes located in apartment buildings. See *U.S. v. Thomas*, 757 F.2d 1359 (1985, CA2NY). Also see *State v. Ortiz*, 600 N.W. 805, 820 (Neb. 1999).

The 8th Circuit court of appeals has expressed it's views on the technique used in *U.S. v. Scott*, 610 F.3d 1009 as being erroneous. *U.S. v. Burston*, 806 F.3d 1123 States: by focusing on Officer Fear's location instead of the drug detection dog's location the Court's decision suggests an officer may remain in a lawful location while his/her drug dog unlawfully invades the curtilage of a home. This suggestion is erroneous. See *Scott* 610 F.3d at 1016. (Emphasis) In both *U.S. v. Roby*, 122 F.3d 1120, 1124 (8th Cir. 1997) and the present case the dog sniffs occurred in a place where the law enforcement was lawfully present.) If this court were to adopt the district court's suggestion, an entirely separate question arises regarding the limits of that technique, the 8th Circuit court of appeals in *Burston* rejected the technique that was used in *Scotts*, yet, officers still used the unlawful technique when they used their drug detection dog to invade the curtilage of the defendant's home.

The hallway leading to defendant's door was common only to defendant and his three immediate neighbors on that level. Even his neighbors would not pass within 6 to 8 inches of defendant's door when traveling to their own. See *U.S. v. Hopkins*, 824 F.3d 726. The hallway on the middle level of defendant's building was shared by Defendant and three immediate neighbors only, as they are the only four apartments on that level of the building. The four apartment units shared the two doors front and back that led to stairs to exit and enter the building. The top level also had four apartments that shared two doors, as well front and back that led to the same stairs to enter and exit the building. But the front two basement level apartments shared a door used only to them for stairs coming up to exit from the front of the building, unless they were heading through middle level to get to the back if they didn't walk around the apartment complex. And the back two level apartments shared a door to a small hallway to exit out back, unless they used the back stairs to pass through the middle level doors to reach the front porch. The front and back level entrances was common to all twelve tenants and their family. However, the drug detection dog alerted to the defendant's door, which is not common to any of the defendant's neighbors.

Prior to *Jardines*, the 8th Circuit ruled that tenants have no expectation of privacy in the common areas of apartment buildings. However, those cases did not refer to the area immediately adjacent to an apartment's front door, and they do not involve the use of a trained police dog. Rather, they refer to common areas that are some distance from the front door and that need not necessarily be traversed every time a resident wishes to enter or exit his/her home. The threshold of the defendant's unit is more akin to a front porch than a shared basement, backyard, or shared hallways closet. See *U.S. v.*

*Hopkins*, 2015 U.S. Dist. Lexis 192 845. Even these common areas are only common to select individuals with connecting residence.

If a shared hallway is in close proximity to the home, it Constitutes protected curtilage. See *U.S. v. Hopkins*, 2015 U.S. Dist. Lexis 88038, No: CR 14-0120. Therefore, the defendant door and the area within a foot of the only door to the defendant's home constitutes protected curtilage. See *U.S. v. Hopkins*, 824 F.3d 726. The area within a foot of defendant's door was "in effect", his front porch. See *U.S. v. Hopkins*, 2015 U.S. Dist. Lexis, 88038. The interior area of a unlocked apartment building Constitutes 4th Amendment protected area. Same as a locked building. See *People v. Bonilla*, 2018 Ill. 122484, 120 N.E.3d 930, 427 Ill. Dec. 863 (Ill. 2018). Also see *U.S. v. Carriger*, 541 F.2d 545 (6th Cir. 1976). Also see *U.S. v. Fluker*, 543 F.2d 709 (1976, CA 9 Alaska). Also see *U.S. v. Case*, 435 F.2d 766 (7th Cir. 1970). Also see U.S. v. Blank, 251 F. Supp. 166 (N.D. Ohio 1966).

The defendant's building was unlocked needing no key for entry, but still constituted as a protected area. A search occurs when there is official intrusion into something an individual seeks to preserve as private. See *Carpenter v. U.S.*, U.S. 138 S. Ct. 2206, 2213, 201 L. Ed.2d 507 (2018). Also see *U.S. v. Fluker*, 543 F.2d 709 (1976, CA 9 Alaska). Surely, the defendant sought to preserve his door and doorway as private. An individual who enters a place defined to be public for 4th Amendment analysis does not lose all claims to privacy or personal security. See *Oliver v. U.S.*, 80 Led2d 214, 466 U.S. 170.

Therefore, although the hallway of defendant's building was accessible to his neighbors, does not mean that the defendant lost all claims to privacy and personal security against unreasonable searches. The background social norms that invite a

visitor to the front door of a home does not invite him there to conduct a search. There is no customary invitation for officers to introduce a trained police dog to explore the area around the home in hopes of discovering incriminating evidence. The scope of a license to enter private property - express or implied is limited not only to a specific area, but also to a specific purpose. See *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013). The apartment management nor landlord could not legally grant officer's a license to approach defendant's home for the purpose of conducting a warrantless search. A search of tenant's premises without a warrant, but with consent of the landlord, cannot be justified on account of the landlord's right to enter the premises without the tenant's consent for maintenance purposes.

Where as here, the purpose of officer's entering the premises was not for maintenance issues, but for the purpose of discovering incriminating evidence. To uphold a search without a warrant would reduce the 4th Amendment to a nullity, and leave tenant's homes secure only in the discretion of the landlord's. See *Chapman v. U.S.* 15 L. Ed. 2d 828, 365 U.S. 610. Therefore, apartment landlord's and management could not legally consent to a warrantless k-9 sniff/search of defendant's home. The Supreme Court has expressed it's views on Curtilage of homes in *Collins v. Virginia*, 584 U.S. 138 S. Ct. 1663; 201 L. Ed. 29 9 *Collins* states: "For 4th Amendment purposes. The most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion". Creating a carveout to the general rule that curtilage receives protection, such that certain types of curtilage would receive 4th Amendment protection only for some purposes. But not for others, seems far more likely to create confusion than does "uniform application" of the courts doctrine.

The protection afforded the curtilage is essentially a protection of families, and personal privacy in an area intimately linked to the home, both "physically and psychologically". The ability to observe inside curtilage from a lawful varitage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible; *Collins* held the automobile exception does not permit warrantless entry into the physical threshold of a house or a similar fixed enclosed structure inside the curtilage like a garage. See *Collins* 584 U.S. at ____, 138 S. Ct. at 1674. The Court explained such a rule would grant constitutional rights to people with the financial means to afford residences with garages in which to store their vehicles, but deprive those persons without such resources of any individualized consideration as to whether the area in which they store their vehicles qualify as curtilage. See *Collins*, 584 U.S. at _____, 138 S. Ct. at 1675.

Applying the relevant legal principles articulated in *Jardines* and *Collins* to this case yields the same results. Just like the front porch, side garden, or outside the front window, the threshold of the defendant's apartment door constitutes an area adjacent to the home, and to which the activity of home life extends, and so is properly considered curtilage. See *Collins*, 584 U.S. at ____, 138 S. Ct. at 1671. The k-9 sniffs of defendant's home exposed defendant to public opprobrium, humiliation, and embarrassment. See *Jardines* v. State, 73 So. 3d 34, 36 (Fla. 2011).

2.   Petitioner asserts that the officers did an illegal search on defendant's door which is in proximity of the area to be curtilage. The curtilage of the defendant's home is included in the area enclosed surrounding defendant's home. Defendant also meets number 3 of the "Dunn Factors" due to the entering and exiting of the home the Defendant uses daily. The Defendant meets 3 important factors known as Dunn factors.

See *U.S. v. Hopkins*, 2015 U.S. Dist. Lexis 192 845. Also see *U.S. v. Burston*, 806 F.3d 1123 (2015 Iowa).

3.  Officers violated *Kyllo v. U.S.*, 150 L. Ed. 2d 94, 533 U.S. 27. By conducting warrantless k-9 sniff. The Supreme Court recognizes a drug detection dog as a device that is not in general public use "when used to explore details of the home." See *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed 2d 495 (2013). The Court in *Jardines* states: We find irrelevant the state's argument (echoed by the dissent) that forensic dogs have been commonly used by police for centuries. This argument is apparently directed to our holding in *Kyllo v. U.S.* 150 L. Ed. 94, 533 U.S. 27, that surveillance of a home is a search where "the government uses a device that is not in general public use to explore details of the home (including its curtilage) that would previously have been "unknownable without physical intrusion.

But the implication of that statement is that when the government uses a physical intrusion to explore details of the home (including its curtilage), the antiquity of the instruments that they bring along is irrelevant; Justice Kagan eloborate more on the issue of a drug dog being a device not in general public use in her separate opinion of *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 185 L. Ed. 2d 495.

Justice Kagan states: drug detection dogs are highly trained tools of law enforcement, geared to respond in distinctive ways to specific scents to convey clear and reliable information to their human partners. See *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 185 L. Ed. 2d 61. They are to poodle down the street as high powered binoculars are to a piece of plain glass like the binoculars, a drug detection dog is a specialized device used for discovering objects not in plain view (or plain smell). As the hypothetical above, that device was aimed here at home - the most private and inviolate

(or so we expect) of all the places and things the 4th Amendment protests. This activity is a trespass ? yes, as the Court holds today. Was it also an invasion of privacy ? yes, that as well; therefore Defendant's lack of complete privacy in his apartment hallway does not also mean that he had no expectation of privacy against persons in the hallway snooping into his apartment using sensitive devices not available to the general public. See *U.S. v. Whitaker*, 820 F.3d 849 (7th Cir. 2016).

Therefore, officers violated defendant's 4th Amendment rights by using a device that is not in general public use to explore details of his home that would previously have been unknowable without physical intrusion. See *U.S. v. Whitaker*, 820 F.3d 849 (7th Cir. 2016).

4. Its unnecessary to consider *Katz* expectation of privacy test. "A persons 4th Amendment rights do not rise or fall with the *Katz* formulation." The *Katz* reasonable expectation test has been added to, not submitted for, the traditional property based understanding of the 4th Amendment, and is unnecessary to consider when the government gains evidence by physically intruding on Constitutionally Protected areas. See *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013).

That officers learned what they learned only by physically intruding on Defendant's property (door) to gather evidence is enough to establish that a search occurred. See *Florida v. Jardines*, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013). The 8th Circuit Court of Appeals did not consider the *Katz* expectation of privacy test in *U.S. v. Hopkins*, 824 F.3d 726 nor in *U.S. v. Burston*, 806 F.3d 1123 (2015 Iowa CA8). *Hopkins* states: The Supreme Court did not reach the expectation of privacy test from *U.S. v. Katz* in *Jardines*, see 133 S. Ct. At 1417, and we need not rely on *Katz* or

*McCaster* to decide our case because Marco's presence on the curtilage of Hopkin's unit may be analyzed *Jardines* and *Burston*; *Burston* states:

    The Supreme Court in *Jardines* did not decide whether the investigation of the Defendant's home violated his expectation of privacy under *Katz v. U.S.* The decision was based on the violation of the Defendant's property, not his privacy rights; when physical intrusion on a Constitutional protected area is present in a case, it is unnecessary for the court to inquire about the targets expectation of privacy. See *Grady v. North Carolina*, U.S. 135 S. Ct. 1368, 1370, 191 L. Ed.2d 459 (2015). The expectation of privacy test in Justice Harlan's concurrence in *Katz* was designed to expand, and not contract, constitutional protections. Even Justice Harlan as the author of the concurring opinion objected to its later applications. See *U.S. v. White*, 401 U.S. 745, 786-87, 91 S.Ct. 1122, 1143 28 L. Ed. 2d 453, 478 (1971) (Harlan J. Dissenting) ("stating intrusions significantly jeopardizing 4th Amendment liberties should require a warrant").

    The phrase expectation privacy expresses a conclusion rather than a starting point. Further, the expectation of privacy analysis was not designed to supplant other constitutional values protected by the 4th Amendment, including the right to be secure in one's home from trespassing by law enforcement.

5.    Failure to produce certification, field deployment, and training records of K-9 and handler used in K-9 sniff of Defendant's home. The Government's failure to produce sufficient certification, training and field deployment records of Coralville police department K-9 unit, results in the alleged positive alert of Defendant's door to be unreliable. See *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 185 L. Ed. 2d 61 (2013) also *U.S. v. Acosta*, 2019 U.S. Dist. Lexis 17946.

The governments failure to produce evidence about the dog training centers certification goes against Coralville K-9 unit credibility, and does not prove the dog training center was a Bonafide Organization. Therefore, Officers violated Defendant's 4th Amendment rights by conducting unreasonable search of Defendant's home based on the alleged alert of a unreliable K-9.

6.  Good faith exception to Exclusionary Rule is unexpected. The method by which evidence supporting a search warrant is clearly illegal, then under *Leon*, evidence obtained under the resulting warrant should be excluded. The Exclusionary Rule was designed to deter police misconduct. If clearly, illegal police behavior can be sanitized by issuance of a search warrant, then there will be no deterrence, and the protective aims of the Exclusionary Rule will be severely impaired if not eliminated. See Craig M. Bradley, The Good Faith Exception cases: Reasonable exercises in Futility, 60 ind. L. J. 287, 302 (1985) (quoted in 1 Wayne R. Lafave, Search and Seizures § 1.3(F) (2d ed. 1987).

Lafave adds that "When the warrant issuing process leaves totally unresolved the lawfulness of the prior police activity, then there is no reason why that process should, via Leon, shield that activity from full scruting at the suppression hearing." LaFave, *Supra*, §1.3(F). See *U.S. v. Oneal*, 17 F.3d 239. Officers engaged in police misconduct by conducting the K-9 search (sniff) of defendant's home without reasonable suspicion to do so, conducting a warrantless K-9 sniff of the curtilage of Defendant's home, using a device not in general public use to discover details of Defendant's home that would have been unknowable without physical intrusion, and by conducting a search of Defendant's home based on the alleged alert of a unreliable K-9 sniff. See *U.S. v. Artis*, 919 F.3d 1123 (9th Cir. 2019).

Officers undertook a search that caused them to invade what they could not fail to have known was potentially another's curtilage. The officers reliance on the search warrant can not be deemed objectively reasonable because the same officers prewarrant conduct was not close enough to the line of validity to make the officer's belief in the validity of the warrant objectively reasonable. See *U.S. v. Burston*, 806 F.3d 1123 (2015 Iowa CA 8). Also there is no police dog body cam footage to prove that officer's conducted a K-9 sniff of Defendant's home.

7.  A search warrant is not issued upon probable cause if the affidavit upon which it is issued merely recites that it's the affiant's "suspicion" or "belief" that a crime is being committed, without disclosure of supporting facts or circumstances. See *Nathanson v. U.S.* 290 U.S. 41, 47, 54 S. Ct. 11, 78 L. Ed. 159 (1933). Nor is there probable cause for the issuance of a warrant if the affiant relies on information from another person without a sworn statement of the circumstances surrounding the informants knowledge or his reliability. See *Spinelli v. U.S.*, 21 L. Ed. 2d 637, 393 U.S. 410. The 4th Amendment protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by officers engaged in the competitive enterprise of ferreting out crime. See *Johnson v. U.S*, *Supra*, 333 U.S. at 13-14, 68 S. Ct. At 369. Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the Court must still insist that the magistrate perform his "neutral and detached" function and not serve merely as a rubber stamp for the police. See *Aguilar v. State of Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 29, 723.

The officers never revealed the informants basis of knowledge of how he knew about Tremayne Lamar Clemons. The informant never stated Clemons was selling out his home nor had information backing up the statement he made. Therefore, the

informant is not reliable because he never came with detailing information about how he knew what Clemons was doing, nor he never bought anything from Clemons to know what he was doing. So officers violated Clemons by intruding in his home from a statement that was not credible they've received by the informant. Nor was their any control buy or evidence indicating Clemons was selling anything before they did a search on Defendant's home with a warrantless K-9. Therefore, officers had no real probable cause for warrant and violated Defendant.

8. Even though Defendant lives in multi unit housing he is still entitled to the same equal protection as a man living in a single family home and no different treatment because of the income difference. Basic command of equal protection is that justice be applied equally to all parties, poor man and affluent man. See *Schilb v. Kuebel*, (1971) 404 U.S. 357, 30 L. Ed. 2d 502, 42 S. Ct. 479. 14th Amendment intended only that equal protection and security should be given to all under like circumstances and that no greater burdens should be laid upon others in same calling and condition. See *Bell's G.R.Co. v. Pennsylvania* (1890) 134 U.S. 232, 33 L. Ed. 892, 10 S. Ct. 533. Also see *Southern Railway Company v. Green* (1910), 216 U.S. 400, 54 L. Ed. 536, 30 S. Ct. 287.

WHEREFORE, Defendant, TREMAYNE LAMAR CLEMONS, prays that the Court will suppress all illegally obtained evidence pursuant to the Fruits of a Poisonous Tree Doctrine.

> TREMAYNE LAMAR CLEMONS, and by,
> **/s/ Jack E. Dusthimer**
> Jack E. Dusthimer #000001356
> 1503 Brady Street
> Davenport  Iowa  52803-462
> Office 563.323.8344 PHONE     563.323.7452FAX
> jdusthimer@yahoo.com, dusthimerlaw@gmail.com