IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | No. 3:20cr0011-JAJ |
| vs. | |
| TREMAYNE LAMAR CLEMONS, | **ORDER** |
| Defendant. | |

This matter comes before the court pursuant to defendant Conley's March 9, 2020 Motion to Suppress Evidence. [Dkt. 31] The motion was filed at the beginning of the Coronavirus pandemic. This court certified, pursuant to the CARES Act, that in-person hearings and jury trials were not safe in the district. The court lifted that prohibition on in-person hearings in Davenport, effective July 1, 2020. Accordingly, this matter was set for evidentiary hearing on July 14, 2020 at which the defendant was present and represented by Jack Dusthimer. The government was represented by Will Ripley. The motion to suppress is denied.

This case arises out of the shooting death of an individual and the shooting injury of others on December 25, 2019 in Coralville, Iowa. Because the defendant was identified as a close associate of the shooters, the police sought to search his apartment which is adjacent to the shooting scene. Witnesses had identified the shooters as having entered the defendant's apartment during an argument and came out with firearms used in the shooting. Witnesses on the scene had also given statements to the police that the defendant was trafficking in marijuana from that residence. Police used a trained drug sniffing dog that alerted to the presence of controlled substances at the door to the defendant's apartment. Police then received a search warrant for the apartment.

The defendant contends that the drug dog sniff at the door to his apartment violated the Supreme Court's decision in *Florida v. Jardines*, 569 U.S. 1 (2013). He further contends that the dog was not reliable and therefore the dog's alert did not provide probable cause for a

search of the residence. The government contends that the dog sniff did not violate *Florida v. Jardines*, that the dog is reliable and that the police can rely on the good faith exception to the exclusionary rule in any event. The court makes the following findings of fact and conclusions of law.

## **Findings of Fact**

On December 25, 2019, police responded to Boston Way in Coralville, Iowa, on the report of shootings that had left one individual dead and others sent to the hospital. Boston Way is a street and neighborhood with a number of multiple family residential units. The defendant resided at 954 Boston Way, Apartment 5. 954 Boston Way is a three story building with four apartments per floor.

As Iowa Division of Criminal Investigation Special Agent Richard Vale responded, he saw that the shooting scene was behind 954 Boston Way. Police found a significant number of firearm shell casings in the area. Police learned that there were two groups of people involved in the altercation that began as a physical confrontation and ended up in the shooting. Witnesses told the police that the defendant was a close associate of two persons who were most culpable in the shooting, Elijah and Milton McAbee. The McAbees were known to frequent the defendant's apartment. Local narcotics investigators had historical intelligence about the defendant's drug trafficking activity at Boston Way. Witnesses and informants had told the police that the defendant was dealing out of his residence. A witness who was reluctant to be identified told police that prior to the shooting the McAbees had gone to the defendant's apartment, emerged with guns and then the shooting happened.

The multifamily unit at 954 Boston Way has no lock or security on either of its exterior doors. The common hallways to all of the units can be accessed at any time by anyone.

On December 26, 2019, Iowa City Police Department Canine Officer Travis Neele brought his dog "Luke" to 954 Boston Way. They entered the building without incident, went to the second floor where Luke briefly examined the first apartment door before being directed to Apartment 5. Luke passed the door to Apartment 5, came back and unequivocally alerted to the presence of controlled substances. The evidence at the hearing demonstrated

that Luke and his handler are exceedingly well trained and have been certified on at least six occasions prior to the December 26, 2019 sniff of the defendant's apartment door.

Armed with this information, Coralville Police Department Detective Michael Darjania applied for a search warrant for the defendant's apartment. In his affidavit [Dkt. 36-2], he described the December 25, 2019 shooting, including the victim and the alleged shooter. Milton McAbee was identified as being responsible for the shooting. The affidavit shows that witnesses identified the defendant as an associate of the McAbees. The affidavit further stated that investigators had received complaints in the past as well as information provided on December 26, 2019 that the defendant resided at 954 Boston Way, Apartment 5, and sells marijuana. A paragraph about the drug sniffing dog and his alert on December 26, 2019 is also included. Finally, the affidavit contains an extensive description of the affiant's experience as well as common drug trafficking patterns. Police executed the warrant and recovered firearms, ammunition, firearm magazines, drug paraphernalia and cellular telephones.

## Conclusions of Law

As noted above, the defendant contends that the drug sniff conducted by Officer Neele and Luke violated his rights under the Fourth Amendment pursuant to the United States Supreme Court's decision in *Florida v. Jardines*. He further contends that the sniff done by Luke did not provide a reliable indication of controlled substances that could support a finding of probable cause. The government disputes both of the defendant's contentions and further contends that, in any event, the fruits of the search of the defendant's apartment are saved from suppression by reason of the good faith exception to the exclusionary rule found in *Leon*.

**Dog sniffs outside apartments**

The "use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Florida v. Jardines*, 569 U.S. 1, 11–12 (2013). In *Jardines*, Florida police approached the defendant's house with a drug-sniffing dog, which began "energetically exploring" the area around the front door before eventually alerting at the door's base. *Id.* at 4. The Court noted that the police had an implied license to approach the door, knock, and linger briefly before leaving, precisely because that

is "no more than any private citizen might do." *Id.* at 8 (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)). But, the Court found, the officers' decision to "introduc[e] a trained police dog to explore the area around the home in hopes of discovering incriminating evidence" was "something else" entirely. *Id.* at 9. Because these actions exceeded the scope of the officers' implied license—and because they took place on the curtilage, or immediate surroundings, of the home[1]—the Court found that the officers had conducted a warrantless search and affirmed the Florida court's decision to suppress the evidence the officers seized.

In the seven years since *Jardines*, the Eighth Circuit Court of Appeals has twice confronted that case's applicability to cases involving apartment buildings, rather than the single-family home searched by the Florida officers. In *United States v. Burston*, an officer brought a drug-sniffing dog to the defendant's apartment and released the dog to sniff along the exterior wall of the apartment building. 806 F.3d 1123, 1125 (8th Cir. 2015). The dog left a walkway and sat next to Burston's private window, between the window and a bush, before alerting to the presence of drugs. In reversing the denial of a motion to suppress, the Eighth Circuit Court of Appeals reasoned that the area next to Burston's window was the curtilage of his apartment, as it immediately surrounded his apartment and evidence showed that he often kept a cooking grill in that spot. *Id.* at 1127–28. The court noted particularly that the dog had travelled within six to ten inches of the window, in an area where no common walkway led, and where a bush and potentially a grill prevented the area from being used as a common area. *Id.* at 1129. Because the officer brought the dog onto curtilage without a warrant and for investigatory purposes, the court found that the exclusionary rule applied. *Id.* at 1129.

In *United States v. Hopkins*, the same officer and dog checked the exterior walls of a row of townhouses for potential drug odors. Like in *Burston*, the dog came with six to eight

---

1 A court seeking to determine whether a particular are is part of the curtilage of the home considers four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Bausby*, 720 F.3d 652, 656 (8th Cir. 2013) (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)). These factors to be considered together, rather than mechanically applied. *Id.* at 656–57.

inches of the defendant's residence and "actually sniffed the creases of the door" before alerting. 824 F.3d at 732–33. But unlike in *Burston*, a walkway, albeit one used only by the defendant and his neighbor, led to the door where the dog alerted. *Id.* at 733. On appeal from the denial of a motion to suppress, the Eighth Circuit Court of Appeals found that the officer's decision to bring the dog to the door violated *Jardines*. *Id.* The existence of a shared walkway did not provide for a license to approach the door from only inches away, reasoned the court: even the defendant's neighbor would not come that close when passing by. *Id.* But unlike in *Burston*, the court held that suppression was inappropriate, as the existence of the walkway meant that the officer acted in good faith in relying on the warrant.[2] *Id.* at 733–34 ("Since *Jardines* had concerned a single family residence and *Burston* was not yet decided, [the officer] had an objectively reasonable belief that *Jardines* did not apply and that the dog sniff was legal.").

The court assumes that the dog sniff at defendant's apartment door violates *Jardines*.

**Sufficiency of the affidavit**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures. U.S. Const. amend. IV. The totality of the circumstances is considered in determining whether probable cause exists to support a search warrant. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). A warrant is supported by probable cause if "there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." *United States v. Mahler*, 141 F.3d 811, 813 (8th Cir. 1998). When a warrant affidavit contains information from an unlawful search, its sufficiency is evaluated after deleting that information. *United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) (citing *United States v. Templeman*, 938 F.2d 122, 124–25 (8th Cir. 1991).

---

[2] Even when a warrant is not supported by probable cause, the *Leon* good faith exception to the warrant requirement allows evidence to avoid suppression when officers' "prewarrant conduct [was] close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Hopkins*, 824 F.3d 726 (8th Cir. 2016) (quoting *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013).

The sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information. *United States v. Davis*, 760 F.3d 901, 903-04 (8th Cir. 2014)

**The *Leon* good faith exception**

Even where probable cause is lacking, the court's inquiry does not end. Pursuant to *United States v. Leon*, 468 U.S. 897 (1984), there is an exception to the exclusionary rule if "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even if that warrant was invalid. The good faith exception does not apply:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Notman*, 831 F.3d 1084, 1089 (8th Cir. 2016) (quoting *Leon*, 468 U.S. at 923). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Cannon*, 703 F.3d at 412. A court should consider "the totality of the circumstances, including any information known to the officer but not included in the affidavit," in determining whether an officer acted in good faith. *United States v. Johnson*, 848 F.3d 872, 879 (8th Cir. 2017).

The *Leon* Court said that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates," and that evidence should be suppressed only when "exclusion will further the purposes of the exclusionary rule." 418 U.S. at 918. The Eighth Circuit Court of Appeals has clarified that "[i]f the method by which evidence supporting a search warrant is seized is clearly illegal, then even under *Leon* . . . evidence obtained under the resulting warrant should be excluded." *United States v. O'Neal*,

17 F.3d 239, 242 (1994). "If clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired if not eliminated." *Id.*

Police may rely on the good faith exception to the exclusionary rule when their "prewarrant conduct [was] close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *Hopkins*, 824 F.3d at 733 (quoting *Cannon*, 703 F.3d at 413). A court should ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).

In this case, the court concludes that the good faith exception to the exclusionary rule found in *Leon* is applicable. Following *Florida v. Jardines*, it was not clear that the holding of that decision applied in the context of a common hallway in an unlocked apartment house. Further, even if the drug sniff information was removed from the search warrant affidavit, the police could rely objectively, in good faith, on the issuance of the warrant.

Upon the foregoing,

**IT IS ORDERED** that the defendant's March 9, 2020 Motion to Suppress Evidence [Dkt. 31] is denied.

**DATED** this 20th day of July, 2020.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA